IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

In the Matter of the Search of:

726 Greenwood St., Fort Walton Beach, FL 32547; a Gray 2000 Infinity Q45; And a Silver 2007 Chevrolet Corvette

CASE NO.: 3:24mj232

_____/

ATTACHMENT C

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jonathan R. Nudelman, being duly sworn, herby depose and state that the following is true to the best of my information, knowledge, and belief:

INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Federal Rule of Criminal Procedure 41 and Military Rule of Evidence ("M.R.E.") 315 of the Uniform Code of Military Justice ("UCMJ"), for authorization to search for and seize evidence of violations of 10 U.S.C. § 915 - UCMJ Art. 115 (communicating threats) and 18 U.S.C § 1001 (False Statements) from: **(1) the living quarters of A1C Daniel Santocono, identified as 726 Greenwood St., Fort Walton Beach, FL 32547,** hereinafter referred to as the **"PREMISES"; (2) a grey in color 2000 Infinity Q45, Florida Registration: CG28DJ; VIN: JNKBY31A1YM700302,** hereinafter referred to as **"VEHICLE #1"**; and **(3) a silver in color 2007 Chevrolet**

1



**Corvette, VIN: 1G1YY25U775111444,** hereinafter referred to as **"VEHICLE #2,"** as further described in Attachment A, for the things described in Attachment B.

2.  I am a Special Agent ("SA") with the Department of the Air Force ("DAF") Office of Special Investigations, commonly referred to as OSI, and is assigned to OSI Detachment 121, located in Hurlburt Field, FL. I have been a Special Agent with OSI since May of 2023 and received training to be an OSI Special Agent at the Federal Law Enforcement Training Center (FLETC), Glynco, GA. Prior to employment with OSI, I served 7 years with the DAF's Security Forces career field, commonly associated to the Military Police, where I was responsible for executive protection operations protecting Senior DAF Officials.

3.  As part of my duties, I investigate criminal violations relating to the acts of communicating threats, in violation of 10 U.S.C. § 915 - UCMJ Art. 115 (communicating threats) and 18 U.S.C § 1001 (False Statements). I have received training and instruction in the field of investigating violent crimes. As part of my training and experience, I have lead cases involving similar violations.

4.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 10 U.S.C. § 915 - UCMJ Art. 115  (communicating threats) and 18 U.S.C § 1001

2

(False Statements) are located on the property and conveyances described in Attachment A.

5. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

**RELEVANT STATUTES**

6. 10 U.S.C. § 915 - UCMJ Art. 115 (communicating threats) prohibits any person subject to the UCMJ from wrongfully communicating a threat to injure a person, property, or reputation of another. 18 U.S.C § 1001 (False Statements) prohibits any person from making a false statement to a federal employee, while conducting official duties.

**DEFINITIONS**

7. The following definitions apply to this Affidavit and Attachment B to this Affidavit.

8. "Threats" are an expressed present determination or intent to kill, injure, or intimidate a person or to damage or destroy certain property presently or in the future. The communication must be one that a reasonable person would understand as expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future. Proof

that the accused actually intended to kill, injure, intimidate, damage or destroy is not required.

9. "Wrongful" is the wrongfulness of the communication relates to the accused's subjective intent. For purposes of this paragraph, the mental state requirement is satisfied if the accused transmitted the communication for the purpose of issuing a threat or with knowledge that the communication will be viewed as a threat. A statement made under circumstances that reveal it to be in jest or for an innocent or legitimate purpose that contradicts the expressed intent to commit the act is not wrongful. Nor is the offense committed by the mere statement of intent to commit an unlawful act not involving a threat.

## FACTS

10. On 19 July 2024, I was telephonically contacted by Maj. Michael Shore and SMSgt Kerrie Tuck, both leaders of the 1st Special Operations Maintenance Squadron ("1 SOMXS"), located on Hurlburt Field, FL. They received information surrounding A1C Daniel Santocono, 1 SOMXS, Hurlburt Field, FL, hereinafter referred to as **"SUBJECT,"** to have made suicidal and homicidal statements to SrA Daymeon King, hereinafter referred to as **"WITNESS #1."** The homicidal threats were directed towards Mariah Forfar, hereinafter referred to as **"VICTIM."**

11. On 19 July 2024, I contacted **WITNESS #1** and inquired if he knew where **SUBJECT** was located. **WITNESS #1** believed **SUBJECT** was at an

4

unknown location in Pensacola, FL.

12. On 19 July 2024, I and other law enforcement officials went to the **PREMISES** to locate **SUBJECT** and check on his mental wellbeing. **SUBJECT** was not home at the time, but one of **SUBJECT's** roommates, SrA Angel Reynoso, told me on 18 July 2024, **SUBJECT** asked SrA Reynoso if he owned a firearm and would be willing to sell it to **SUBJECT**. SrA Angel Reynoso did not have a firearm to sell to **SUBJECT**. Additionally, he pointed to **SUBJECT's** room, which was located in the southeast corner of **PREMISES.**

12. On 19 July 2024, I coordinated with the Florida Department of Law Enforcement's ("FDLE") Northwest Florida Fusion Center ("NWFFC"). The NWFFC searched License Plate Reader ("LPR") databases and found **VEHICLE #1** to be in Fort Walton Beach, FL. This information was provided to me at 1600 CDT hours.

13. On 19 July 2024, in fear of **SUBJECT's** and **VICTIM's** safety, I contacted **SUBJECT's** cellular provider and requested real-time location information of his device's Global Positioning System ("GPS"). Location information received at 1613 CDT hours disclosed **SUBJECT** was near the **PREMISES.**

14. On 19 July 2024, while conducting an official investigative step, I and other law enforcement officials made physical contact with **SUBJECT** at the

5

**PREMISES.** I identified my myself as a Special Agent with OSI and wore a ballistics vest with the letters "OSI" and "POLICE" printed on the front. **SUBJECT** was located inside a detached garage structure. **VEHICLE #1** was parked in front of the main east facing door of **PREMISES,** and **VEHICLE #2** was parked inside the detached garage structure. **SUBJECT** told law enforcement he owned **VEHICLE #2.** Law enforcement was screening him for mental health and safety concerns when he admitted to having suicidal ideations on 18 July 2024, but did not recall if he made threats against **VICTIM.** He denied owning or possessing a firearm between 18 and 19 July 2024. As discussed further below, this statement is believed to be false, as I and other law enforcement agents received information that **SUBJECT** owned or possessed a firearm between 18 and 19 July 2024. SMSgt Kerrie Tuck and another military official escorted **SUBJECT** to HCA Florida Fort Walton-Destin Hospital, hereinafter referred to as **"HOSPITAL,"** for a mental health evaluation. **SUBJECT** did not drive himself to the **HOSPITAL,** and all vehicles remained parked on the **PREMISES.** At approximately 2021 CDT hours, I was notified **SUBJECT** was placed under a "Baker Act" mental health evaluation at the **HOSPITAL.**

15. On 21 July 2024, SMSgt Kerrie Tuck notified me that **WITNESS #1** received a Snapchat picture message from **SUBJECT** on 19 July 2024, at approximately 1400 CDT hours. The picture was said to contain an image of a

6

firearm on **SUBJECT's** lap.

16. On 22 July 2024, I interviewed **WITNESS #1.** He provided a sworn statement and said on 18 July 2024, **WITNESS #1** and **SUBJECT** were driving to the Grey Taproom Bar located in Navarre, FL. While driving, **SUBJECT** began to tell **WITNESS #1** about **SUBJECT's** relationship issues with **VICTIM**. **SUBJECT** said, "If it doesn't work out with her, I'm going to kill myself," and "If it isn't her…it's no one." **SUBJECT** then began to tell **WITNESS #1 SUBJECT** had a "better idea" and that he had a "plan." **SUBJECT** shared he'd go to **VICTIM's** workplace and kill her, then "blow my brains out." **SUBJECT** then stated, "If I can't have her…nobody can." **SUBJECT** instructed **WITNESS #1** not to disclose the plan to anyone at the bar and to "act normal." While at the bar, **SUBJECT** showed **WITNESS #1** approximately 7 to 8 separate text messages relating to asking individuals about purchasing a firearm.

17. On 22 July 2024, I interviewed SrA Jarrett Ayers, hereinafter referred to as "**WITNESS #2**". He provided a sworn statement and said on the morning of 19 July 2024, **SUBJECT** asked him to help with a financial transaction. **SUBJECT** said he would send **WITNESS #2** $250.00 USD via Apple Pay. **SUBJECT** then requested the funds be sent back to **SUBJECT** on CashApp. **SUBJECT** told **WITNESS #2** he could subtract the "Instant Transfer" fees out of the principal

amount.

18. **WITNESS #1** and **WITNESS #2** both received a Snapchat picture message from **SUBJECT** on 19 July 2024. They stated the picture contained an image of a black or dark grey "Glock" handgun. **WITNESS #1** stated he knew the photo was taken in **VEHICLE #1,** as he was a passenger in the vehicle on 18 July 2024.

19. On 22 July 2024, I interviewed Connor Davis, hereinafter referred to as **"WITNESS #3"**. He provided a sworn statement and said that on 19 July 2024, **SUBJECT** contacted him and asked for help cleaning and disassembling a "newly acquired firearm." **WITNESS #3** stated **SUBJECT** brought him a firearm, which he described as a "black Sig Sauer P365XL" and stated it was "sticky and rusted." **WITNESS #3** knew the weapon was a P365XL as he owns the same firearm and knew how to clean and disassemble it. He shared **SUBJECT** possessed approximately 12 9mm rounds and a firearm magazine. **WITNESS #3** cleaned the firearm and gave it back to **SUBJECT**.

20. A query of the DoD Person Search database revealed the **SUBJECT's** reported home address to be **726 Greenwood St., Fort Walton Beach, FL 32547,** which confirmed **SUBJECT** lived at the **PREMISES** location.

21. A query of an investigative database revealed the **SUBJECT's** registered vehicle is a **gray in color 2000 4-door Infiniti, Florida Registration:**

8

**CG28DJ; VIN: JNKBY31A1YM700302 (VEHICLE #1).** Surveillance of the **PREMISES** revealed a **grey in color 2000 4-door Infinity** was parked outside the **PREMISES.**

22. The NWFFC's Open-Source Intelligence search of various websites and applications revealed **SUBJECT** has been associated to **VEHICLE #2** on social media. Surveillance of the **PREMISES** revealed a **silver in color Chevrolet Corvette** was contained inside of a detached garage structure on the Northwest corner of the **PREMISES.**

## CONCLUSION

23. Based on the facts and investigation described above, probable cause exists to believe that in the **PREMISES, VEHICLE #1,** and/or **VEHICLE #2** (described in Attachment A), will be found evidence, fruits, and instrumentalities of a violation of 10 U.S.C. § 915 – UCMJ Art. 115 and 18 U.S.C § 1001 (False Statements) (described in Attachment B). Based on my training and experience, there is reason to believe that **SUBJECT** possessed a black handgun and stored the weapon in the **PREMISES, VEHICLE #1,** and/or **VEHICLE #2**. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items described in Attachment A for the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

NUDELMAN.JONATHA
N.RYAN.1525832976
Digitally signed by NUDELMAN.JONATHAN.RYAN.1525832976
Date: 2024.07.25 08:49:55 -05'00'

SA JONATHAN R. NUDELMAN
Office of Special Investigations

SUBSCRIBED and SWORN before me this 25 day of July, 2024.

_____
ZACHARY C. BOLITHO
UNITED STATES MAGISTRATE JUDGE